**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FRANCIS BARRIENTOS, on behalf of
himself and all others similarly situated,

Case No. _____

       Plaintiff,

**JURY TRIAL DEMAND**

       **v.**

**CLASS ACTION**

FITNESS MEMBER SERVICES, LLC, a
Utah limited liability company, d/b/a VASA
FITNESS CORPORATE

       Defendant.

_____/

## CLASS ACTION COMPLAINT

1.     Plaintiff Francis Barrientos ("Plaintiff"), on behalf of himself and all others similarly situated, by counsel, brings this action against Defendant Fitness Member Services, LLC, a Utah limited liability company, d/b/a VASA Fitness Corporate ("Defendant" or "VASA Fitness") for engaging in an illegal "automatic renewal" scheme with respect to its membership plans and for violating the (1) Illinois Automatic Contract Renewal Act, (2) the Illinois Fraud and Deceptive Business Practices Act, (3) the Illinois Physical Fitness Act, and (4) the Electronic Funds Transfer Act (the "EFTA").

2.     Defendant is a gym and fitness center operator that offers subscription memberships that allow customers to exercise at their fitness centers. Defendant markets itself as a "high value, low-price fitness club" which offers its members "top-of-the-line equipment, exercise machines, free weights and a wide variety of group fitness and boutique style classes."[1]

---

[1] VASA Fitness, "About VASA Fitness," https://vasafitness.com/our-story/ (last visited August 15, 2023).

3.      Defendant systematically violates the Illinois Automatic Contract Renewal Act ("ACRA") by failing to present the automatic renewal offer terms in a clear and conspicuous manner on its website at the time members sign up and by failing to disclose clearly and conspicuously how to cancel the membership.

4.      Defendant also violates the ACRA by failing to disclose clearly and conspicuously how to cancel the membership in the initial contract or at the time of signup.

5.      Further, Defendant is engaged in a pattern and practice of exploiting its members by continuing to charge them monthly fees, without the members' consent, after they have canceled their memberships.

6.      Defendant's contract and practices also violate the Illinois Physical Fitness Services Act.

7.      Plaintiff further asserts that he and members of the classes suffered damages resulting from the illegal actions of Defendant debiting Plaintiff's and class members' bank accounts on a recurring basis without obtaining a written authorization signed or similarly authenticated for preauthorized electronic fund transfers and/or after clear revocation of any authorization or similar authentication for preauthorized electronic funds transfers from Plaintiff's and class members' accounts, thereby violating the EFTA.

8.      Plaintiff asserts this action on behalf of himself and all others similarly situated, seeking monetary damages, restitution, declaratory and injunctive relief, and attorneys' fees.

**PARTIES**

9.      Plaintiff is a citizen of Illinois and a resident of DuPage County.

10.     Defendant is a Utah limited liability company that offers fitness and exercise services at its various locations. Defendant's principal place of business is in Orem, Utah.

Defendant conducts business in Utah and other states including Illinois. Defendant operates three fitness centers in the state of Illinois. Defendant is registered to do business in Illinois and can be served process via its registered agent Illinois Corporation Service C at 801 Adlai Stevenson Dr., Springfield, IL 62703-4261.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

12.     The Court may assert personal jurisdiction over Defendant, because Defendant is doing business within this State and transact business within this State such that it has sufficient minimum contacts with Illinois and/or has purposely availed itself of Illinois markets to make it reasonable for this Court to exercise jurisdiction over Defendant, and because Plaintiffs' claims arise out of Defendant's unlawful in-state actions.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b), because Defendant resides and maintains offices within this District, and because a substantial part of the events giving rise to claims at issue occurred in this District.

## BACKGROUND FACTS

### I.     DEFENDANT VASA FITNESS'S GYM MEMBERSHIPS

#### A.     Defendant's Membership Signup Process

14.     Defendant offers premium fitness facilities accessible to VASA Fitness members for weight-lifting, workout classes, training, and general exercise.

15.     To become a VASA Fitness member, customers must pay a monthly membership fee. Defendant generally offers its monthly memberships to customers at $9.99 or $12.49 per month for the basic membership and $24.49 per month for the fitness membership.

16.     These memberships are offered on a recurring basis for monthly and/or yearly renewal terms, and all memberships automatically renew at the end of the defined renewal term unless the subscriber cancels.

17.     To sign up for a VASA Fitness membership, consumers can visit the VASA Fitness website.[2] There, they can select one of the membership plans as exemplified in the VASA web page below:



18.     After selecting a membership plan, consumers are directed to subsequent web pages on the VASA Fitness website, where they are prompted to create a membership account and input their billing information:

---

[2] *See* https://vasafitness.com (last visited August 15, 2023).







19.     Consumers are then directed to a final web page (the "Checkout Page"), where prospective members can input their payment information and complete their purchase. The Checkout Page is shown below:



20. Defendant's Checkout Page fails to disclose the full terms of its automatic renewal program. Nowhere on the checkout page, or the previous pages, does Defendant disclose that the membership will automatically renew each month. The scrollable terms and applicable fees listed on the web page do not disclose that the membership will automatically renew, nor does it describe how to cancel a membership.

21. Upon completion of the membership signup process, VASA fitness automatically generates a membership contract and adds the customer's signature and initials to the contract without the member's affirmative consent. A copy of Plaintiff's contract (the "Contract") is attached hereto as Exhibit A.

22. The membership contract is not shown to members prior to the Checkout Page and is only accessible by clicking on the "VIEW FULL CONTRACT" link on the Checkout Page.



(Emphasis added to photo)

23. Unless a customer clicks on this small link on the Checkout Page, they will never see the entire contract before completing their membership purchase.

24. Customers are not required to click the "VIEW FULL CONTRACT" link in order to complete their purchase.

25. All of the signatures and initials on the membership contract are automatically generated by Defendant without ever requiring members to view or approve the entire contract.

26.     Upon information and belief, each member of VASA Fitness receives a welcome email (the "Welcome Email") after signing up, which includes a contract outlining the membership plan they selected. A copy of the Welcome Email to Plaintiff is attached hereto as Exhibit B.

27.     The membership contract is only presented to members in a welcome email after the member completes the signup process.

28.     All contracts utilized by VASA Fitness for its fitness and exercise services are substantially similar take-it-or-leave-it form adhesion contracts.

29.     The Welcome Email does not reference the membership contract or in any way alert users that a contract is attached to the Welcome Email. The email does not disclose that the membership will be automatically renewed or describe how a member can cancel the membership.

30.     The membership contract is attached to the very bottom of the email, below the signature and company information, and it is never referenced in the subject or body of the Welcome Email.

31.     Indeed, consumers are never notified that a membership contract is even an element of the Welcome Email.

32.     The membership contract is presented to members in such a way that it could be, and is, easily overlooked.

33.     As a result, Plaintiff and the class members were entered by Defendant into a physical fitness services contract at the time of signup without their knowledge.

**B.      The Contract**

34.     The membership contract contains two pages. The first page includes the member's personal information, the membership fee they will be charged on a monthly basis, and a

Promissory Note with small type at the bottom of the page. The second back page contains a waiver of liability and fees, rules, and regulations in small print.

35.    The front page of the membership contract contains a large box approximately half-way down the page which shows the total monthly dues to be paid by the member.

36.    Below this is another box with the title "PROMISSORY NOTE." The first paragraph in Promissory Note section states the following:

> I agree that I have signed hereunder a contract/note which will be processed & collected by PARAMOUNT ACCEPTANCE for and on behalf of VASA Fitness, and that any future involvement I may have regarding the billing of this contract will be directly with Paramount Acceptance or its assignees. My failure to regularly attend and utilize the facilities does not relieve me of my obligations regardless of the circumstances. I agree that, except as herein provided, my membership is non-cancelable. Should I default, I agree to pay all costs of collection, including by not limited to collection fees, court costs, and reasonable attorney's fees.

Ex. A.

37.    Below the first paragraph in the Promissory Note section, Defendant states the following:

> For VALUE RECEIVED, I/We, or any of us Promise to Pay to the Order of VASA Fitness or its assignees that amount of ____12.49____/month. Due on the __Day Club Opens__ day of each month beginning __Day club opens___ (month/year). Following the initial 1 (one) month membership term, my/our membership agreement will automatically renew on a month-to-month basis at the rate of ____12.49____ until a written 1 (one) month cancellation notice is received by VASA Fitness at the address noted below.

Ex. A.

38.    The only address for VASA Fitness that is "noted below" is an address for the VASA Fitness Corporate Office at 1259 S 800 E, Orem, Utah 84097.

39.    The membership contract does not disclose that the membership will be automatically renewed in a clear and conspicuous manner. Specifically, although the membership contract states that the "membership agreement will automatically renew on a month-to-month

basis…until a written 1 (one) month cancellation notice is received by VASA Fitness," it fails to comply with the ACRA because the disclosure is placed in a block of text in the middle of the page. *See* Ex. A. at p. 1. Moreover, the text is the same size, color, and font as that of the surrounding block of text, which is smaller than most other disclosures on page one (1). In other words, the disclosure was presented in such a way that it could be, and is, easily overlooked, and is therefore not "clear and conspicuous" as required by 815 ILCS 601/10(a).

40. Furthermore, no disclosure is ever presented to members at the time of their signup, nor are members alerted that an automatic contract renewal provision is contained in the Contract mailed to them after signup.

41. On the back page of the membership contract, paragraph 17 under the "FEES, RULES AND REGULATIONS" section is labeled "Termination of Contracts." It states that:

> This contract may be terminated only by giving 1 (one) month advance written notice to VASA Fitness. Monthly dues and other applicable fees must be current to terminate this contract.

Ex. A. at p. 2.

42. The membership contract does not state clearly and conspicuously how to cancel the membership in accordance with 815 ILCS 601/10(a) because it gives conflicting, confusing, and unnecessarily difficult instructions regarding its cancelation. As described above, the first mention of the cancellation notice on page one requires a "written 1 (one) month cancellation notice" to be received by Defendant at the "address noted below." On page 2, the actual "Termination" provision states that "1 (one) month advance written notice" must be given to VASA Fitness, without stating any requirements for an address.

43. The written notice is exceptionally confusing because there are two different addresses referenced in the membership contract. One address is the address of the fitness center

Plaintiff attended in Illinois and the other address, referenced by the autorenewal provision, is Defendant's headquarters in Utah.

44.     Moreover, the cancellation provision on page two of the membership contract is in small font that is not distinguished in any way from the surrounding block of text. In fact, Defendant included other information, such as the membership fee and membership type in much larger text in the top half of the first page of the Contract.

45.      The cancellation procedure was presented in such a way that it could be, and is, easily overlooked, and is therefore not "clear and conspicuous."

46.     Furthermore, as mentioned above, the membership contract is not presented to members until after the completion of their membership signup and it is presented in such a way that it could be, and is, easily overlooked. Indeed, Plaintiff and class members did not sign and initial the membership contract. Instead, Defendant automatically generated their signatures and initials while Plaintiff and class members were completing their online signup process.

**C.     Online Consumer Complaints About VASA Fitness's Deceptive Billing Practices**

47.     Defendant is well aware that its autorenewal scheme and membership cancellation scheme deceives consumers. Hundreds of VASA Fitness members have complained of Defendant's unclear billing practices and confusing cancellation policy on websites like the Better Business Bureau ("BBB")[3], where VASA Fitness has an average 1-star rating from customers.

48.     Below is a sampling of the more than 600 customer complaints on BBB related to the unclear cancellation policy and confusing billing associated with the membership:

---

[3] *See* https://www.bbb.org/us/ut/orem/ profile/health-club/vasa-fitness-1166-2001562/complaints (last visited August 15, 2023).



**Initial Complaint**
06/15/2022

**Complaint Type:** Billing/Collection Issues
**Status:** Answered ?

I was the responsible party for a Vasa membership for my son. I cancelled his account back in October 2021, speaking directly to a customer ********************* rep. I am getting collection calls now for an outstanding $150 that they have continued to **** even though the membership was cancelled, saying it wasn't cancelled "correctly". How can I request cancellation directly through customer ********************* and not have it done correctly? How as a business, do you continue to keep active a membership that isn't being paid for and that was specifically cancelled, and are now threatening to report on my credit?Vasa does not allow any membership changes to be done in person on site. Apparently, using their customer ********************* line doesn't work either. This account was cancelled and I don't appreciate having my credit threatened because they chose to ignore my request to cancel and just kept billing, unbeknownst to me.



**Initial Complaint**
07/02/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ?

Vasa fitness continues to **** my account and sent me to collections for $404 which is illegal because i canceled my contract in writing via certified mail with signature required reciept in 2020. I have the signed delivery reciept proving cancelation and my copy of the letter. I will be suing.



**Initial Complaint**
11/28/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ?

My son ********************* has attempted to cancel his membership repeatedly. They make this process impossible.We waited until he paid his monthly charge, today, and tried to cancel, and they want another monthly payment. It has been well over their six months cancellation penalty.



**Initial Complaint**
12/03/2022

**Complaint Type:** Problems with Product/Service
**Status:** Answered ?

Ive paid 240$ for one session that was 40 minutes long when I was conned into signing a contract for 60 minute sessions, the contract is a scam and the service they offer is not good. They told me i could cancel the training if i didnt like it when i was signing the contract when all i was doing was clicking some boxes on an Ipad.

 **Initial Complaint**
03/16/2023

**Complaint Type:** Billing/Collection Issues
**Status:** Resolved

I have made multiple attempts to close my account with VASA fitness. Their app says I can close it on there and it keeps notifying me that my account doesn't exist. I went on their website to close my account and same problem. I called the gym itself and they said they are unable to cancel my membership there. Now I was charged today for my membership again after making multiple attempts to close my account beforehand. I resorted to contacting my bank and having them block all future payments with VASA Fitness. They are completely unprofessional and their means of making cancellation impossible is borderline fraud.

 **Initial Complaint**
05/03/2023

**Complaint Type:** Billing/Collection Issues
**Status:** Resolved

In August 2022, I realized I needed to cancel my gym membership (account ********* as my physician told me I couldn't lift over 5 pounds (I was having prolonged pain/numbness after an auto accident when I was hit by an intoxicated driver). I have a doctor's note on this from this physician. I couldn't figure out how to cancel on the **** app but I was able to freeze my account starting on or about August 30, 2022. Shortly after, I went into the **** on **** ********** in **** (near *****), **. I told the **** employee at the front desk that I had tried to cancel on the app and needed to make sure it actually got canceled. I understood she was processing my request at her computer and she confirmed to me that my membership would now be cancelled (so I knew I didn't have to do anything else or owe any money going forward). I have not returned or used any services at **** since that time. However, recently I received communication from an attorney's office saying my account with **** was past due. Apparently, the money sought is for monthly dues from after I was told my account had been cancelled!I am frustrated because I attempted in good faith to cancel and was told cancellation was complete, by a **** employee, as described above, and have not used any services since then. However, now, **** is attempting to collect money from me that never should have been charged after that point.My fiancee, who has been a **** member for a long time, and other people are surprised this happened to me. We hope this is just a mistake on ****'s part. I guess my fiancee's payment card information was once not properly updated to his account by the front desk at that same ****, even though they said it was, so maybe they are prone to making mistakes there? In any case, please correct my balance owed to $0 and fix anything that was reported on my credit report. For privacy reasons, at this time, I am not sharing other past events at **** about which I could complain.

 **Business response**
05/04/2023

Hello,
I sincerely apologize for the inconvenience with VASA Fitness and am so sorry for the car accident you were apart of. I have located your membership, Brindie Dunham   -   6701003044259W. I am not seeing a previous request to cancel. The membership agreement does state that we need a written request to cancel. However, I would be happy to have you pay us for the balance directly rather than the collections agency so it will not affect your credit. Please reach out to us at *********** to pay the balance of $107.21.

49.     These reviews are merely a sampling of the negative comments consumers have left about Defendant's deceptive sign-up, billing, and cancellation policies and practices.

**D.     Plaintiff's Experience**

50.    Plaintiff signed up for a VASA Fitness membership on October 7, 2021, via Defendant's website.

51.    Before Plaintiff purchased his VASA Fitness membership, Defendant did not disclose to Plaintiff all required automatic renewal and cancelation terms. Specifically, the manner in which the information was presented was insufficient to put Plaintiff on notice because the VASA Fitness Checkout Page did not clearly and conspicuously state that the VASA Fitness membership would automatically renew every month until Plaintiff cancelled, and it did not clearly and conspicuously describe the cancellation process that applied to Plaintiff's membership.

52.    As a result of Defendant's deficient disclosures and deceptive practices, when Plaintiff entered into the Contract and paid for his membership on or around October 7, 2021, he was unaware that Defendant enrolled him in an "automatic renewal" program under which the membership would renew each month unless he cancelled in a specific manner envisioned to be required by Defendant. But even the manner described is deficiently disclosed and deceptive given the form of the "written notice" is not set out and it is unclear where it is actually supposed to be sent.

53.    On the same day Plaintiff signed up for a VASA Fitness membership, October 7, 2021, Defendant sent Plaintiff the Welcome Email. *See* Ex. B. The Welcome Email failed to disclose that Defendant was enrolling Plaintiff in a membership that automatically renewed each month, and the Welcome Email did not describe the cancellation process that applied to Plaintiff's membership.

54.    Further, the Welcome Email did not alert Plaintiff that Defendant had automatically generated the Contract (Ex. A) which contained Plaintiff's electronic signature.

55.     The Welcome Email did not notify Plaintiff that the Contract was attached to the email. As a result, Plaintiff never saw or assented to the Contract he allegedly entered into with the Defendant.

56.     In addition, at the time Plaintiff purchased a Vasa Fitness membership, the VASA Fitness workout facility was still under construction and thus not open to the public.

57.     Plaintiff never utilized Defendant's facilities at any time during his membership.

58.     Defendant's Villa Park, Illinois, fitness center did not open until December 19, 2021, two months *after* Plaintiff signed up for a VASA Fitness membership.[4]

59.     Shortly after the Villa Park, Illinois fitness center opened, in December 2021, Plaintiff called the number disclosed in the Welcome Email and spoke to the manager of the VASA Fitness center located at 300 N. Ave, Villa Park, IL 60181 (the "Manager").

60.     Plaintiff affirmatively cancelled his VASA Fitness membership with the Manager of the fitness center, and the Manager confirmed that Plaintiff's VASA Fitness membership was cancelled, and Plaintiff would no longer be billed by VASA Fitness.

61.     However, Plaintiff continued to incur monthly charges from VASA Fitness after he cancelled his membership.

62.     Based on Plaintiff's conversation with the VASA Fitness Manager, Plaintiff reasonably believed that his VASA Fitness membership was cancelled and that he would no longer be billed.

63.     Plaintiff did not authorize Defendant to make monthly charges to his account after his cancellation.

---

[4]    *See* @vasafitness, Instagram (December 19, 2021), https://www.instagram.com/p/CYGApqGtjho/.

64.     Defendant nevertheless automatically renewed Plaintiff's membership and charged Plaintiff an additional eleven (11) times without Plaintiff's knowing consent.

65.     In October 2022, Plaintiff became aware of the VASA Fitness charges on his bank account.

66.     He again contacted VASA Fitness and demanded they stop charging his account.

67.     In March 2023, Defendant sent Plaintiff's account to collections.

68.     Plaintiff never stepped foot in Defendant's facilities or used any of their products, yet he was charged more than $100 in monthly membership fees by Defendant. Even after affirmatively cancelling his membership on two separate occasions, Plaintiff was still charged unauthorized membership fees by Defendant.

69.     Plaintiff suffered real monetary loss as a result of Defendant's failure to properly disclose its autorenewal and cancellation policy and Defendant's deceptive policy and practices with regards to Plaintiff's membership cancellation.

## II.     DEFENDANT VIOLATED ILLINOIS LAW

### A.     Defendant Violates Illinois Automatic Contract Renewal Act

70.     At all relevant times, Defendant failed to comply with the ACRA in two ways: (1) by failing to disclose the automatic renewal terms in a clear and conspicuous manner on the VASA Fitness website in violation of 815 ILCS 601/10(a), and (2) by failing to disclose the cancellation procedure clearly and conspicuously on the website in violation of 815 ILCS 601/10(a).

### B.     Defendant Violates Illinois Physical Fitness Services Act

71.     The Illinois Physical Fitness Services Act (the "PFSA") governs contracts for physical fitness services in the State of Illinois. 815 ILCS 645.

72. The PFSA requires that every contract for physical fitness services be in writing, stating that:

> Every contract for physical fitness services shall be in writing and shall be subject to this Act. All provisions, requirements and prohibitions which are mandated by this Act shall be contained in the written contract before it is signed by the customer. A copy of the written contract shall be given to the customer at the time the customer signs the contract. Physical fitness centers shall maintain original copies of all contracts for services for as long as such contracts are in effect and for a period of 3 years thereafter.

815 ILCS 645/4.

73. The PFSA also prohibits unfair and deceptive acts of practices, including, but not limited to:

    a. Use of coercive sales tactics;

    b. Misrepresentations of the quality, benefit or nature of services;

    c. Misrepresentation of the qualifications or numbers of personnel, or the present or maximum number of customers who may contract to use the facilities of the center; or

    d. Misrepresentation of the skills or abilities of any customer or potential customer.

815 ILCS/10(a).

74. Defendant violated Section 10 of the PFSA through its unfair and deceptive acts and practices by:

    a. Misrepresenting the quality, benefit or nature of its services by not disclosing that they would continue charging Plaintiff monthly fees after he cancelled his membership;

    b. Using coercive sales tactics to enter members into a physical fitness services contract during the online signup process without presenting the contract to members;

    c. Failing to present the written Contract to Plaintiff and class members before adding their signatures;

17

      d.   Unilaterally adding Plaintiff and Class members' signatures to the Contract without presenting the contract to them; and

      e.   Creating and executing a contract with Plaintiff and members of the class without their knowledge or assent.

75.     Additionally, the Illinois Physical Fitness Services Act states in Section 7 that:

Every contract for physical fitness services at a planned physical fitness center or a center under construction shall further provide that, in the event that the facilities and services contracted for are not available within 12 months from the date the contract is entered into, or within 3 months of a date specified in the contract, whichever is earlier, the contract may be cancelled at the option of the customer, and all payments refunded within 30 days of receipt by the center of the cancellation notice.

815 ILCS 645/7.

76.     At the time Plaintiff purchased Defendant's membership, the physical fitness center located at 300 N. Ave Villa Park, IL 60181 was not completed or open for business.

77.     The VASA Fitness location for which Plaintiff signed up for a membership was a "planned physical fitness center" or "center under construction" as defined by 815 ILCS 645/7.

78.     Defendant's membership contract even stated that membership payment was due on the "Day Club Opens." However, the membership contract did not include a provision stating that the customer's membership contract may be cancelled at the option of the customer and all payments refunded if the center was not available within 12 months from the date the contract was entered into or within 3 months of a date specified in the contract.

79.     In violation of the Illinois Physical Fitness Services Act, Defendant's membership contract does not include a written provision related to planned or unopened physical fitness center.

80.     The PFSA states that "[a]ny contract for physical fitness services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice, or

advertisement of the physical fitness center or any of its employees or agents **shall be void and unenforceable.**" 815 ILCS 645/10(b).

81.     Defendant's membership contract failed to meet the requirements of the PFSA. Defendant also engaged in false, fraudulent, or misleading representations or omissions in order to induce Plaintiff and class members into entering into their membership contracts.

82.     As a result, in addition to Defendant's conduct being deceptive, Defendant's physical fitness membership contract is void and unenforceable. *See* 815 ILCS 645/10(b).

## III.   DEFENDANT CHARGES CUSTOMERS MONTHLY MEMBERSHIP FEES EVEN AFTER CUSTOMERS CANCEL THEIR VASA FITNESS MEMBERSHIP

83.     Defendant has a routine practice of charging its members monthly fees even after those members have cancelled their VASA Fitness membership.

84.     As described above, Plaintiff affirmatively cancelled his VASA Fitness membership with the manager of the VASA fitness center he held a membership at.

85.     The Defendant manager confirmed that Plaintiff no longer had a membership at VASA Fitness and that his account would not be charged the monthly fees.

86.     However, Defendant continued to charge Plaintiff monthly membership fees even though Plaintiff had requested his membership be cancelled and VASA Fitness's employee had confirmed Plaintiff's membership was cancelled.

87.     Further, as demonstrated by the consumer complaints cited in this Complaint, Defendant regularly charges other VASA Fitness members after they have affirmatively cancelled their membership.

88.     In reality, Defendant does not cancel memberships when a VASA Fitness member makes a cancellation request, but instead represents to the customer that their membership will be cancelled and continues charging a monthly fee anyway.

19

89.     These unfair and deceptive acts and practices misrepresent and conceal Defendant's actual membership fee and membership cancellation practices. Furthermore, these acts violate the Illinois Fraud and Deceptive Business Practices Act. *See* 815 ILCS 505/2.

## IV.    DEFENDANT VIOLATED THE ELECTRONIC FUNDS TRANSFER ACT ("EFTA") AND REGULATION E.

90.     The primary purpose of the Electronic Funds Transfer Act ("EFTA") is to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems. The primary objective of this subchapter, however, is the provision of individual consumer rights." 15 U.S.C. § 1693(b).

91.     "Electronic funds transfer" is defined in Regulation E to mean "any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account." 12 C.F.R. § 205.3(b).

92.     15 U.S.C. 1693e(a) states:

A preauthorized electronic funds transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made. A consumer may stop payment of a preauthorized electronic fund transfer by notifying the financial institution orally or in writing at any time up to three business days preceding the scheduled date of such transfer. The financial institution may require written confirmation to be provided to it within fourteen days of an oral notification if, when the oral notification is made, the consumer is advised of such requirement and the address to which such confirmation should be sent.

(Emphasis added).

93.     Similarly, the implementing regulation, 12 C.F.R. § 205(10)(b), states:

(b) *Written authorization for preauthorized transfers from consumer's account*. Preauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer.

94.     The purported authorization for preauthorized transfers from Plaintiff's checking account (through his debit card) is on the bottom of the Contract. Ex. B. However, Defendant did not notify Plaintiff of this authorization at the time of signup, nor did Plaintiff sign the Contract or affirmatively assent the electronic funds transfer authorization. Instead, Defendant automatically generated the Contract during Plaintiff's membership signup process and automatically populated Plaintiff's signature on the Contract without Plaintiff's express consent.

95.     Defendant did not provide a copy of the Contract to Plaintiff when the purported authorization was made, but instead attached a copy of the Contract to the Welcome Email after Plaintiff completed his membership signup. The Welcome email did not reference the Contract or inform Plaintiff that the Contract contained an electronic funds transfer authorization. As a result, Plaintiff never saw the Contract or even knew it existed.

96.     Furthermore, Plaintiff contacted Defendant and unequivocally informed Defendant to cease debiting his account. Yet, despite clear revocation of any authorization to do so and without proper authorization to begin with, Defendant continued to deduct funds from Plaintiff's account multiple times on a recurring basis, without Plaintiff's consent or authorization.

97.     Defendant's acts and practices are in violation of the EFTA, 15 U.S.C. § 1693, *et seq.*, and its surrounding regulations, including, but not limited to, 12 C.F.R. §§ 1005.7, 1005.8, and 1005.9.

## CLASS ALLEGATIONS

98.     Plaintiff brings this action on behalf of himself and as a class action on behalf of the following proposed class (the "Classes"):

> The Fitness Class: All persons in Illinois who, within the applicable statute of limitations period, purchased Defendant's fitness membership ("Fitness Class").

The Cancellation Class: All persons in Illinois who, within the applicable statute of limitations period, cancelled their VASA Fitness membership but were subsequently charged by Defendant ("Cancellation Class").

The EFTA Class: All persons who, within the applicable statute of limitations period, cancelled their VASA Fitness membership but were subsequently charged by Defendant ("EFTA Class").

99.     The Fitness Class and the Cancellation Class are collectively referred to herein as the "Classes."

100.    Plaintiff reserves the right to modify or amend the definition of the Classes as this litigation proceeds.

101.    Excluded from the Classes are Defendant's officers, directors, affiliates, legal representatives, employees, successors, subsidiaries, and assigns. Also excluded from the Classes are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

102.    The time period for the Classes is the number of years immediately preceding the date on which this Complaint was filed as allowed by the applicable statute of limitations, going forward into the future until such time as Defendant remedies the conduct complained of herein.

103.    This action is properly maintainable as a class action under 735 Ill. Stat. Ann. 5/2-801, and all requirements are met for the reasons set forth in the following paragraphs.

104.    Numerosity: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable. The exact number and identities of the members of the proposed Class is unknown at this time and can be ascertained only through appropriate discovery. Plaintiff estimates the number of members in the Classes to be in the thousands.

105.    Common Questions of Law and Fact Predominate: There are many questions of law and fact common to Plaintiff and the Classes, and those questions substantially predominate

over any questions that may affect individual Class members. Common questions of law and fact include:

    a.  Whether Defendant's membership contracts constitute "automatic renewals" within the meaning of 815 ILCS 601/1;

    b.  Whether Defendant failed to provide the clear and conspicuous language required by 815 ILCS 601/10(a);

    c.  Whether Defendant was unjustly enriched;

    d.  Whether Defendant's conduct alleged herein constitutes unfair and deceptive trade practices;

    e.  Whether Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

    f.  Whether Defendant violated the Electronic Funds Transfer Act;

    g.  Whether Defendant violated the Illinois Physical Fitness Services Act;

    h.  The proper method or methods by which to measure damages; and

    i.  The declaratory and injunctive relief to which the Class is entitled.

106. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the Classes. Plaintiff and all members of the Classes have been similarly affected by Defendant's common course of misconduct.

107. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has retained counsel with substantial experience in prosecuting complex and consumer class action litigation. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

23

108.     Superiority of Class Action: Plaintiff and the members of the Classes suffered, and will continue to suffer, harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

109.     Risk of Inconsistent or Varying Adjudication: Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for the Defendant as the parties opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

110.     Action Generally Applicable to Classes as a Whole: Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole.

**COUNT ONE: VIOLATION OF THE ILLINOIS**
**AUTOMATIC CONTRACT RENEWAL ACT, 815 ILCS 601/1, *et seq.***

*(on behalf of Plaintiff and the Fitness Class)*

111.    Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth below.

112.    The ACRA, 815 ILCS 601/1, et seq. requires that, "[a]ny person, firm, partnership, association, or corporation that sells or offers to sell any products or services to a consumer pursuant to a contract, where such contract automatically renews unless the consumer cancels the contract, shall disclose the automatic renewal clause clearly and conspicuously in the contract, including the cancellation procedure."

113.    Defendant is a person, firm, partnership, association, or corporation that sells or offers to sell products or services to consumers, such as Plaintiff and the Illinois Class, pursuant to a contract.

114.    The VASA Fitness membership automatically renews unless customers, such as Plaintiff and members of the Fitness Class, cancel the membership.

115.    As described above, Defendant violated the ACRA by not disclosing the automatic renewal clause and cancellation procedure clearly and conspicuously on their web page at the time customers signed up for a membership. Defendant also failed to clearly and conspicuously disclose the automatic renewal clause and cancellation procedure in the Contract created by Defendant.

116.    Furthermore, Defendant failed to clearly and conspicuously disclose the automatic renewal clause and cancellation procedure in their Welcome Email to Plaintiff and other Fitness Class members.

117.    Upon information and belief, Defendant has not established and implemented written procedures to comply with the Illinois Automatic Contract Renewal Act or enforce compliance with its procedures.

118.     Upon information and belief, Defendant's failure to comply with the Illinois Automatic Contract Renewal Act was not the result of error.

119.     Upon information and belief, Defendant did not provide a full refund or credit for all amounts billed to or paid by consumers, such as Plaintiff and the Fitness Class, from the date of the renewal until the date of the termination of the account, or the date of the subsequent notice of renewal.

120.     A violation of the ACRA "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act." *See* ACRA, 815 ILCS 601/15.

121.     Plaintiff and members of the Fitness Class have sustained damages as a result of Defendant's conduct.

## COUNT TWO: UNJUST ENRICHMENT
### (*on behalf of Plaintiff and the Classes*)

122.     Plaintiff incorporates the preceding paragraphs of this Complaint as if fully set forth herein.

123.     Plaintiff, individually and on behalf of the Classes, asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative to Plaintiff's statutory claims and applies only if the parties' contract is deemed unconscionable, null and void, or otherwise unenforceable for any reason. In such circumstances, unjust enrichment will dictate that Defendant disgorge all improperly assessed fees. Also, if claims are deemed not to be covered by the contract—for example, if Defendant has violated state and federal law, but in such a way that it does not violate the contract, then unjust enrichment will require disgorgement of all improperly assessed subscription fees.

124.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly assessed fees upon Plaintiff and the members of the Classes that are unfair, unconscionable, and oppressive.

125.    Defendant has unjustly retained a benefit in the form of improper membership fees to the detriment of Plaintiff and the members of the Classes.

126.    Defendant has retained this benefit through its fee maximization scheme, and such retention violates fundamental principles of justice, equity, and good conscience.

127.    Defendant should not be allowed to profit or enrich itself inequitably and unjustly at the expense of Plaintiff and the members of the Class and should be required to make restitution to Plaintiff and the members of the Classes.

**COUNT THREE: VIOLATION OF THE ILLINOIS
PHYSICAL FITNESS SERVICES ACT, 815 ILCS 645/1, *et seq.*
(*on behalf of Plaintiff and the Fitness Class*)**

128.    Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth below.

129.    Plaintiff's and the Fitness Class's membership contracts are governed by and subject to the Illinois Physical Fitness Services Act, 815 ILCS 645/1, *et seq.*

130.    Defendant's fitness centers are "physical fitness centers," as defined in Section 2(a) of the PFSA, and their memberships and services are "physical fitness services" as defined in Section 2(b).

131.    Section 4 of the PFSA provides, in relevant part, that "[e]very contract for physical fitness services shall be in writing" and that "all provisions, requirements and prohibitions which are mandated by this Act shall be contained in the written contract before it is signed by the customer." 815 ILCS 645/4.

132.    Section 7 of the PFSA states that:

Every contract for physical fitness services at a **planned physical fitness center** or a **center under construction** shall further provide that, in the event that the facilities and services contracted for are not available **within 12 months from the date the contract is entered into, or within 3 months of a date specified in the contract**, whichever is earlier, the contract **may be cancelled** at the option of the customer, and all payments refunded within 30 days of receipt by the center of the cancellation notice.

815 ILCS 645/7 (Emphasis added).

133.    At the time Plaintiff signed for Defendant's membership, the physical fitness center located at 300 N. Ave Villa Park, IL 60181 was not completed or open for business.

134.    Defendant's Contract even stated that membership payment was due on the "Day Club Opens". However, the Contract did not include a provision stating that the customer's contract may be cancelled at the option of the customer and all payments refunded if the center was not available within 12 months from the date the contract was entered into or within 3 months of a date specified in the Contract.

135.    In violation of the Illinois Physical Fitness Services Act, the Contract does not include a written provision related to planned or unopened physical fitness center.

136.    The PFSA also prohibits "[u]nfair or deceptive acts and practices." 815 ILCS 645/10(a).

137.    It also states that "[a]ny contract for physical fitness services entered into in reliance upon any false, fraudulent, or misleading information, representation, notice or advertisement of the physical fitness center or any of its employees or agents shall be void and unenforceable." 815 ILCS 645/10(b).

138.    In an enforcement action brought by a customer "[a]ny customer injured by a violation of this Act may bring an action for the recovery of damages. Judgment may be entered

28

for 3 times the amount at which the actual damages are assessed, plus costs and reasonable attorneys' fees." 815 ILCS 645/11.

139.    Defendant engaged in unfair and deceptive acts and practices described in further detail above.

140.    Defendant's Contract failed to meet the written requirements under the PFSA. Additionally, Plaintiff entered into the Contract upon reliance of false or misleading statements or omissions made by Defendant, including Defendant's failure to obtain Plaintiff's signature or provide Plaintiff a copy of the Contract at the time of signup and Defendant's misrepresentation of its autorenewal and cancellation policy.

141.    As a result of Defendant's illegal physical fitness services contract and its unfair and deceptive practices, Plaintiff and members of the Fitness Class suffered real monetary damages in the form of monthly membership fees paid to, an unlawfully retained, by Defendant.

142.    Furthermore, Defendant's membership contract is in violation of the written requirements of the PFSA and was entered into upon reliance of false, fraudulent, or misleading information or representations. Therefore, the Contract is void and unenforceable.

### COUNT FOUR: VIOLATION OF THE ILLINOIS CONSUMER
### FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*
### (*on behalf of Plaintiff and the Cancellation Class*)

143.    Defendant has violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq*.

144.    Section 2 of the ICFA, 815 ILCS 505/2, provides:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful

29

whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

145.    Section 10a of the ICFA, provides in relevant part:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper . . .

. . .

(c) . . . [I]n any action brought by a person under this Section, the Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

815 ILCS 505/10A(a).

146.    Plaintiff and other members of the Cancellation Class are "consumers" or "persons," as defined under the ICFA, 815 ILCS 505/1 *et seq*.

147.    Defendant's conduct, as alleged herein, occurred in the course of trade and commerce.

148.    Defendant knowingly and intentionally employed an unfair and deceptive policy and practice of continuing to charge its members monthly membership fees after the customers canceled their memberships. and failing to disclose its policy and practice of charging fees after cancelation.

149.    Defendant systematically failed to adequately train employees to comply with VASA Fitness cancellation procedures and failed to provide a proper policy and procedure related to the cancellation of VASA Fitness memberships.

150.    Defendant's statements and omissions to Plaintiff and the Cancellation Class were material and were likely to mislead Plaintiff and members of the Cancellation Class, and, in fact, did mislead Plaintiff and Cancellation Class members.

151.    Unbeknownst to Plaintiff, Defendant continued to charge Plaintiff monthly membership fees after Defendant told Plaintiff his account was cancelled. Defendant charged Plaintiff these monthly fees even though Plaintiff did not attend Defendant's fitness facilities.

152.    Plaintiff relied on Defendant's misrepresentations as discussed above.

153.    Defendant made these statements and omissions with the intent that Plaintiff and Cancellation Class members would rely on them.

154.    Defendant's conduct described herein constitutes unfair and deceptive acts or practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

155.    As a direct and proximate result of Defendant's conduct, Plaintiff and members of the Cancellation Class have suffered actual damages.

## COUNT FIVE: VIOLATION OF THE ELECTRONIC FUNDS TRANSFER ACT
### (*on behalf of Plaintiff and the EFTA Class*)

156.    Plaintiff realleges and incorporates the preceding paragraphs of this Complaint as if fully set forth below.

157.    Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), provides that a "preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

158.    Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b), provides that "[p]reauthorized electronic fund transfers from a consumer's account may be authorized only by a writing signed or similarly authenticated by the consumer. The person that obtains the authorization shall provide a copy to the consumer."

159.    Section 205.10(b) of the Federal Reserve Board's Official Staff Commentary to Regulation E, 12 C.F.R. § 205.10(b), Supp. I, provides that "[t]he authorization process should evidence the consumer's identity and assent to the authorization." *Id*. at ¶10(b), comment 5. The Official Staff Commentary further provides that "[a]n authorization is valid if it is readily identifiable as such and the terms of the preauthorized transfer are clear and readily understandable." *Id*. at ¶10(b), comment 6.

160.    The EFTA includes a private right of action, stating:

(a) Individual or class action for damages; amount of award. Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of—

(1) any actual damage sustained by such consumer as a result of such failure;

(2)

(A) in the case of an individual action, an amount not less than $100 nor greater than $1,000; or

(B) in the case of a class action, such amount as the court may allow, except the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1693m, *et seq*.

161.    Regulation E may be enforced through a private right of action.

162.    Defendant has debited Plaintiff's and class members' bank accounts on a recurring basis without obtaining Plaintiff's or class members' assent to the authorization to make electronic fund transfers. Further, Defendant failed to present the written authorization to Plaintiff and class members at the time the authorization was purportedly made.

163.    In multiple instances, Defendant has debited Plaintiff and class members' bank accounts on a recurring basis after Plaintiff and the class members revoked consent to such debits, thereby violating Section 907(a) of the EFTA, 15 U.S.C. § 1693e(a), and Section 205.10(b) of Regulation E, 12 C.F.R. § 205.10(b).

164.    Defendant's violation of the EFTA harmed Plaintiff and class members.

165.    As a result of Defendant's violations of the EFTA, Plaintiff and class members are entitled to actual and statutory damages, as well as attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1693m.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff on his own behalf and on behalf of the Classes respectfully request that the Court:

A.    Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

B.    Award Plaintiff and the Classes actual, statutory, and punitive damages in an amount to be proven at trial;

C.    Declare Defendant's conduct violates the statutes and common laws referenced herein;

D.    Grant an order finding in favor of Plaintiff and the Classes on all counts asserted herein;

E.    Award Plaintiff and the Classes restitution in an amount to be proven at trial;

F.    Award Plaintiff and the Classes pre- and post-judgment interest in the amount permitted by law;

G.    Award Plaintiff and the Classes attorneys' fees and costs as permitted by law;

33

H.      Enjoin Defendant from engaging in the practices outlined herein; and

I.      Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff, by counsel, demands trial by jury.


Dated: August 25, 2023                  Respectfully submitted,


                                        _/s/ Jeffrey D. Kaliel_
                                        Jeffrey D. Kaliel (D.C. Bar No. 983578)
                                        KALIELGOLD PLLC
`                                       1100 15th Street NW, 4th Floor
                                        Washington, D.C. 20005
                                        Telephone: (202) 350-4783
                                        jkaliel@kalielgold.com

                                        Sophia Goren Gold*
                                        KALIELGOLD PLLC
                                        950 Gilman Street, Suite 200
                                        Berkeley, CA 94710
                                        Telephone: (202) 350-4783
                                        sgold@kalielgold.com

                                        **JOHNSON FIRM**
                                        Christopher D. Jennings*
                                        Tyler B. Ewigleben*
                                        Winston S. Hudson*
                                        610 President Clinton Avenue, Suite 300
                                        Little Rock, Arkansas 72201
                                        Telephone: (501) 372-1300
                                        chris@yourattorney.com
                                        tyler@yourattorney.com
                                        winston@yourattorney.com

                                        * *Pro Hac Vice* applications to be submitted
                                         *Counsel for Plaintiff and the Proposed Classes*